* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the injury.
2. Plaintiff's average weekly wage was $434.40 yielding a compensation rate of $289.61 per week.
3. The carrier on the risk is Electric Insurance Company.
4. The Parties were subject to the North Carolina Workers' Compensation Act at the time of the injury.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Morris R. Hope was 35 years old on the date of the hearing before the Deputy Commissioner. He graduated from high school and has two years of college.
2. Plaintiff began his employment with GE (through its predecessor Commercial Plastic) in September 1999. Prior to that, he worked at a textile mill for four years as a machine operator, did computer data entry, and worked for a family business. At GE, he was a warehouse supervisor in charge of shipping and receiving.
3. Plaintiff admitted he had experienced neck and shoulder problems before the date of the alleged incident in this case, and these problems had not resolved by the date of the alleged injury in this case.
4. Plaintiff claimed to have injured himself at work on December 11, 2002. He reportedly felt a sharp pain in his neck and shoulder while transferring plastic sheets.
5. Mr. John Shields, the branch manager of GE, explained there are only eight employees at the facility where plaintiff worked — a manager, five sales people and two warehouse people. He identified the company's injury reporting guidelines and explained the protocol is to report an on-the-job accident to a supervisor immediately and to see a doctor if necessary. These guidelines are posted in the break room. His first awareness that plaintiff was claiming an on-the-job injury occurred when plaintiff's counsel filed a Form 18 on March 10, 2004, one year and four months after the alleged on the job injury. Mr. Shields testified that plaintiff told him that his neck pain and shoulder pain was a gradual process.
6. Mr. John Bybee was a sales representative at the facility where plaintiff worked and was one of plaintiff's direct supervisors. Mr. Bybee testified that plaintiff's neck problems started before GE purchased the plant from Commercial Plastics.
7. Mona Champion is a salesperson for GE. She worked with plaintiff during the entire time of his employment. She testified plaintiff was having problems with his neck before the July 2002 buyout of Commercial Plastic by GE. She had several conversations with plaintiff before the alleged date of accident about his neck problems. He never mentioned any on-the-job injury to her. In fact, upon returning to work in September 2003, Plaintiff told Mona he was not injured on the job.
8. No written reports were filed with the employer or the Commission until the Form 18 was filed on March 10, 2004. This was after plaintiff had surgery and had been out of work for almost a year.
9. Dr. Richard Gunter is a family medicine doctor. He testified that plaintiff was first seen in his office on May 15, 2002 by Dr. Tuttle. Dr. Gunter confirmed that on September 3, 2002, plaintiff complained of pain in the middle part of his upper back.
10. Plaintiff's next visit was on December 12, 2002. This visit was on follow-up from the neck and shoulder pain about which plaintiff had complained in September 2002. Dr. Gunter confirmed that plaintiff stated this was a problem he had had for several years. Dr. Gunter agreed that plaintiff's complaints of symptoms on September 3, 2002 were indicative of a cervical radiculopathy. Dr. Gunter confirmed that there was no mention of injury occurring in December 2002 and that his medical impression was that this was a continuation of the condition for which plaintiff had been seen a few months earlier. Plaintiff never told him about doing any lifting at work the day before.
11. Dr. Gunter ordered an MRI. Dr. Gunter stated that Plaintiff's complaints in December 2002 were the same as those he had complained of in September. After the MRI results came back, Dr. Gunter referred plaintiff to Dr. Cowan, a neurosurgeon.
12. Dr. Michael Cowan is a neurosurgeon in Rock Hill, South Carolina. He first saw plaintiff on January 7, 2003. This visit was for neck pain, right shoulder pain, and numbness into the right arm and hand "that had been going on since the summer of 2002." Plaintiff indicated the problem had worsened "gradually over time." Dr. Cowan recommended physical therapy. Dr. Cowan confirmed that plaintiff filled out an intake sheet. The spaces on the forms for a date of injury and explanation for how plaintiff's injury had occurred had been left blank by plaintiff on the forms. Dr. Cowan also noted that nowhere in his initial visit did plaintiff ever report any lifting incident in December 2002. He confirmed that plaintiff's report of gradual onset of neck symptoms beginning in the summer of 2002 was consistent with what plaintiff had also reported to Dr. Gunter in September and December of 2002.
13. The testimony and reports of Drs. Gunter and Cowan were further corroborated by the initial history taken by the physical therapist on January 20, 2003.
14. Plaintiff received cervical injections in the spring and summer of 2003. By July 2003, Plaintiff's neck problems had worsened. Therefore, Dr. Cowan performed a right C4-5, C5-6 endoscopic foraminotomy diskectomy on August 5, 2003. Dr. Cowan released plaintiff to return to work full-duty on September 22, 2003.
15. Plaintiff confirmed he initially did better following the surgery. The dates plaintiff was claiming disability for the alleged neck injury were from December 20, 2002 until September 21, 2003. During the period, plaintiff received short-term disability benefits for 26 weeks, and long-term disability benefits for the remainder. Additionally plaintiff actually returned to part-time work (four hours a day) on September 8, 2003. He returned to full-time work on September 22, 2003.
16. Plaintiff stated he had no problems doing full-duty work until a subsequent low back incident on October 30, 2003. Plaintiff claimed he was sliding a sheet of cardboard that weighed approximately two pounds when he felt pain in his lower back. Plaintiff did not report the injury until some nine months later. Plaintiff claimed he told acting manager John Bybee what had happened the next day, October 31, 2003.
17. Mr. John Bybee was an Inside Sales Representative at GE. Mr. Bybee would have been plaintiff's supervisor when Mr. Holton was not around. Mr. Bybee did not remember plaintiff making any report of injury regarding October 30, 2003. He did not become aware of any supposed lower back injury until he was informed of the November 17, 2004 deputy commissioner hearing.
18. Mr. Holton was the branch manager from January 2003 until January 2004. He testified he was not aware of any on-the-job injury being claimed by plaintiff to his low back in October 2003 until the day of the hearing, November 17, 2004. Further, Mr. Bybee never reported to him that Mr. Hope had an injury on October 30, 2003.
19. The first written report of injury for the low back injury was not made until a Form 18 was filed on July 28, 2004, nine months after the alleged on the job injury.
20. Plaintiff returned to Dr. Gunter on November 3, 2003. He complained of low back pain after twisting his back at work. Plaintiff was diagnosed with lumbar back strain and written out of work for one week. Plaintiff returned to full-duty work on November 10, 2003. By the time plaintiff was seen on December 8, 2003, Dr. Gunter confirmed that plaintiff was not making any complaints of pain with his low back.
21. On January 17, 2004, plaintiff had a severe panic attack, for which he sought treatment at the emergency room. In his answer to interrogatory No. 18, plaintiff stated he was given a stack of orders when he felt the onset of his anxiety. Plaintiff admitted on cross-examination that he associated the onset of his anxiety problems with this event at work, not his work-related injury.
22. Plaintiff returned to Dr. Cowan on February 19, 2004 with recurring complaints of neck pain. Dr. Cowan confirmed that, when he saw plaintiff on February 19, 2004, this was a continuation of his previous neck problems for which he had performed surgery. Dr. Cowan testified he took plaintiff out of work at that time for problems with his neck, not a low back injury. Because plaintiff's neck problems did not improve with physical therapy, Dr. Cowan referred plaintiff for a pain clinic evaluation on March 25, 2004. Plaintiff's last visit with Dr. Cowan was on April 23, 2004.
23. Dr. Ratko Vujicic is a pain management doctor practicing in Rock Hill, South Carolina. He first saw plaintiff on April 2, 2004. Plaintiff underwent injections and radio frequency neuroablation of the cervical spine. Plaintiff reported that by August 4, 2004 his neck pain was "gone." The last time Dr. Vujicic saw plaintiff was on December 3, 2004. Mr. Hope reported that his "neck pain was completely gone," and that he only had low back pain "from time to time." Dr. Vujicic released plaintiff from his care and indicated plaintiff did not need any further treatment because he was doing so well.
24. Plaintiff has neither returned to work nor looked for work of any kind since he last worked for GE. Mr. Shields related that plaintiff has not asked to come back to work since he left in February 2004. Regarding disability, Dr. Cowan testified that plaintiff was capable of earning wages in competitive employment, and that he would recommend vocational rehabilitation.
25. Dr. Vujicic agreed with Dr. Cowan that plaintiff was capable of earning wages in competitive employment as of the last time he saw him.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer a compensable injury by accident or specific traumatic incident to his neck on or about December 11, 2002. Defendants are not responsible for any treatment or disability related to plaintiff's neck condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not suffer a compensable injury by accident or specific traumatic incident to his low back on or about October 30, 2003. Defendants are not responsible for any treatment or disability related to plaintiff's low back condition. N.C. Gen. Stat. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for medical and disability benefits resulting from his alleged neck injury on or about December 11, 2002 is hereby DENIED.
2. Plaintiff's claim for medical and disability benefit resulting from his alleged low back injury on or about October 30, 2003 in hereby DENIED.
3. Each party shall bear its own costs, except the Defendants shall pay an expert witness fee of $275.00 to Dr. Richard Gunter, $285.00 to Dr. Ratko Vujicic, and $150.00 to Ellen Levine, M.S., CRC if not paid by prior order.
This the 5th day of January 2006.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER